UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> OAKMONT FINANCIAL, INC. and JOSEPH CHARLES DICRISCI, <br><br> Defendants. | Case No. 9:16-cv-80055 <br><br> Complaint for Injunctive and Other Equitable Relief, Restitution, and Civil Monetary Penalties Under the Commodity Exchange Act |

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") alleges as follows:

### I. SUMMARY

1. From at least July 16, 2011, and continuing through at least July 27, 2012 (the "Relevant Period"), Defendant Oakmont Financial, Inc. ("Oakmont"), by and through the actions of its employees and agents, including but not limited to Defendant Joseph Charles DiCrisci ("DiCrisci") (collectively, "Defendants"), entered into, offered to enter into, or conducted any office or business in the United States for the purpose of soliciting or accepting any order for the purchase or sale of precious metals from retail customers on a leveraged or financed basis. These transactions constituted illegal, off-exchange retail commodity transactions. By this conduct, Defendants have engaged, are engaging, or are about to engage in conduct that violates Sections 4(a) and 4d(a) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6(a) and 6d(a) (2012).

1

2. DiCrisci controlled Oakmont throughout the Relevant Period and failed to act in good faith or knowingly induced Oakmont's violations alleged herein. DiCrisci is therefore liable for Oakmont's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

3. At all relevant times, the acts and omissions of DiCrisci and other managers, employees, and agents of Oakmont were committed within the scope of their employment, agency, or office with Oakmont; therefore, Oakmont is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation ("Regulation") 1.2, 17 C.F.R. § 1.2 (2015), as a principal for the actions and omissions of DiCrisci and any other manager, employee, or agent of Oakmont, in violation of the Act.

4. Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices, to compel compliance with the Act, and to further enjoin them from engaging in any commodity-related activity.

5. In addition, the Commission seeks civil monetary penalties, restitution, and remedial ancillary relief, including but not limited to, trading and registration bans, disgorgement, rescission, pre-judgment and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, or similar acts and practices, as more fully described below.

## II.   JURISDICTION AND VENUE

7. Section 6c of the Act, 7 U.S.C. § 13a-1, authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person

has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

8. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2)(D) and 6c of the Act, 7 U.S.C. §§ 2(c)(2)(D) and 13a-1 (2012).

9. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants transacted business in this District, and certain transactions, acts, and practices alleged in this Complaint occurred, are occurring, or are about to occur within this District.

### III.   THE PARTIES

#### A.   Plaintiff

10. Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2015).

#### B.   Defendants

11. Defendant **Oakmont Financial, Inc.** was a Florida corporation formed in October 2010 that was administratively dissolved in September 2012. Its principal place of business was Boynton Beach, Florida. Oakmont was a telemarketing firm that solicited retail customers to invest in off-exchange retail commodity transactions. Oakmont has never been registered with the Commission in any capacity.

12. Defendant **Joseph Charles DiCrisci** is a resident of New York, New York. DiCrisci was an owner, principal, and controlling person of Oakmont. During the Relevant Period, DiCrisci was not registered with the Commission.

13. For most of the period from February 2002 through March 2005, DiCrisci was registered as an associated person with several introducing brokers registered with the Commission. From November 2003 through March 2005, he was also listed as a principal of one of those firms, which he owned and controlled. On or about May 26, 2005, the National Futures Association ("NFA") Business Conduct Committee issued a complaint alleging that: 1) DiCrisci, his firm, and his employee made deceptive and misleading sales solicitations; and 2) DiCrisci and his firm failed to supervise his employee in connection with such activity. On or about December 20, 2005, an NFA Hearing Panel issued a decision barring DiCrisci from NFA membership or associated membership and from acting as a principal of an NFA member for one year. Among other things, the panel ordered DiCrisci to pay a $10,000 fine if, after the expiration of his one-year membership bar, he were granted NFA membership or associated membership or became a principal of an NFA member. The panel also ordered DiCrisci to tape record, for six months, all conversations between himself and existing or potential customers and to retain the tapes for one year from the time they were created if he again became an NFA member or associate. Finally, the panel ordered that in the event DiCrisci became a principal of an NFA member, DiCrisci would be required to cause all associated persons of that firm, and of any other firm of which he became a principal, to tape record, for six months, all conversations that occurred between all associated persons and existing or potential customers and to retain the tapes for one year from the time they were created.

14. On or about July 13, 2010, the Florida Department of Agriculture and Consumer Services issued an Informal Settlement and Immediate Final Order to Cease and Desist Specified Telemarking Activities against DiCrisci and an entity he owned and controlled that sold investments in precious metals by telephone for: 1) failing to register as a Florida commercial

telephone seller; and 2) employing fourteen individuals who failed register as Florida commercial telephone salespersons. DiCrisci and his firm were ordered to pay a $10,000 fine and to comply with Florida's telemarking licensing requirements.

## IV.   RELATED ENTITIES

15. Oakmont introduced customers to **Hunter Wise Commodities, LLC** ("Hunter Wise"), which held itself out as a precious metals wholesaler and clearing firm. Hunter Wise purported to confirm the execution of customer off-exchange retail commodity transactions.

16. Hunter Wise was organized as a California limited liability company in July 2007 and was registered to do business in Nevada. It maintained business addresses in Las Vegas, Nevada and Irvine, California. On its website, Hunter Wise held itself out as "a physical commodity trading company, wholesaler, market maker, back-office support provider, and finance company." Hunter Wise purported to offer, enter into, and confirm the execution of retail commodity transactions involving gold, silver, platinum, palladium, and copper throughout the United States using a network of telemarketing solicitors such as Oakmont that it referred to as "dealers."

17. On February 19, 2014, a court in this District, in an action captioned *CFTC v. Hunter Wise Commodities, LLC*, held that Hunter Wise and other defendants violated Section 4(a) of the Act, 7 U.S.C. §6(a), the prohibition against off-exchange trading of retail commodity transactions like the ones at issue here. The court granted summary judgment in favor of the Commission. 1 F. Supp. 3d 1311, 1320-1322 (S.D. Fla. 2014).

## V.   STATUTORY BACKGROUND

18. Section 2(c)(2)(D) of the Act, 7 U.S.C. §2(c)(2)(D), gives the Commission jurisdiction over "any agreement, contract, or transaction in any commodity" that is entered into

with, or offered to, a non-eligible contract participant "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis" ("retail commodity transactions") with respect to conduct occurring on or after July 16, 2011, subject to certain exceptions not applicable here.  Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D), makes Section 4(a) of the Act, 7 U.S.C. §6(a), applicable to retail commodity transactions "as if" such transactions are contracts for the sale of a commodity for future delivery.

19. The Act defines an eligible contract participant ("ECP"), in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.  Section 1(a)(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi) (2012).  During the Relevant Period, Oakmont solicited non-ECP customers to enter into retail commodity transactions and executed retail commodity transactions with non-ECP customers.

20. Section 4(a) of the Act, 7 U.S.C. § 6(a), in relevant part, makes it is unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

21. Section 4d(a) of the Act, 7 U.S.C. § 6d(a), in relevant part, provides that it shall be unlawful for any person to be a futures commission merchant ("FCM") unless such person

shall have registered with the Commission as an FCM. In pertinent part, Regulation 1.3(p), 17 C.F.R § 1.3(p) (2015), defines an FCM as "[a]ny individual, association, partnership, corporation, or trust . . . engaged in soliciting or in accepting orders for . . . any agreement, contract, or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i) of the Act . . . ." *See also* Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012) (defining an FCM).

## VI.   FACTS

22.   During the Relevant Period, Oakmont operated as a telemarketing firm that solicited retail customers to engage in off-exchange retail commodity transactions involving leveraged precious metals. Although Oakmont also offered precious metals on a fully-paid basis, the majority of its business was in off-exchange retail commodity transactions. Only Oakmont's off-exchange retail commodity transactions through Hunter Wise during the Relevant Period are at issue here.

23.   At all times during the Relevant Period, DiCrisci was an owner, principal, and controlling person of Oakmont. DiCrisci managed, or controlled those who controlled, the day-to-day operations of Oakmont; determined employee salaries and commission compensation rates; directed payments from Hunter Wise to Oakmont;[1] entered into agreements with Hunter Wise on behalf of Oakmont; and communicated with Hunter Wise on behalf of Oakmont in connection with Oakmont's operations and customer transactions.

24.   At all times during the Relevant Period, Oakmont employed individuals to, among other things, solicit retail customers to engage in off-exchange retail commodity transactions. DiCrisci supervised or managed individuals who oversaw the solicitation of funds

---

[1] DiCrisci also directed payments due Oakmont from Hunter Wise to another entity he owned and controlled, Joseph Charles Asset Management, Inc.

by Oakmont employees, he was involved in hiring Oakmont employees, and he had authority to fire Oakmont employees.

25. DiCrisci, however, attempted to hide his control over Oakmont. He did not want his involvement with Oakmont known to regulators and others.

26. Oakmont's employees conducted nearly all of their solicitations by telephone. When soliciting customers for off-exchange retail commodity transactions, Oakmont's employees represented that to purchase a certain quantity of metal, customers needed to deposit a percentage of the total metal value and arrange for a loan for the remaining amount. Hunter Wise provided the financing for the loans to the customers. However, Oakmont did not disclose to all of its customers Hunter Wise's involvement in the off-exchange retail commodity transactions.

27. After a customer invested, Oakmont contacted Hunter Wise to accomplish the transaction. Oakmont collected the funds needed for the transaction from the customer and sent them to Hunter Wise. Hunter Wise provided back office support services to Oakmont and customer access to the details of the transaction.

28. With respect to retail commodity transactions, Oakmont charged customers commissions, storage, and other fees for purchasing the metal and interest on loans to buy metal. Hunter Wise provided Oakmont's share of the commissions and fees to Oakmont after it received the customer's funds from Oakmont.

29. In the leveraged precious metals transactions at issue, Oakmont's customers did not take delivery of precious metals.

30. During the Relevant Period, Oakmont collected at least $2,308,228 from at least 107 customers in connection with retail commodity transactions. Of this amount, at least

$735,329 was paid to Oakmont in the form of commissions, markups, storage fees, and interest charges.

31. Oakmont and Hunter Wise never bought, sold, loaned, stored, or transferred any physical metals for the off-exchange retail commodity transactions at issue. Likewise, Oakmont and Hunter Wise never delivered any precious metals to any customers in connection with the financed metals transactions at issue.

## VII.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I
### ILLEGAL OFF-EXCHANGE TRADING
### Violations of 7 U.S.C. § 6(a)

32. Paragraphs 1 through 31 of this Complaint are re-alleged and incorporated herein by reference.

33. During the Relevant Period, the retail commodity transactions described in this Complaint were offered and entered into by Defendants (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, (b) with persons who are not ECPs or eligible commercial entities as defined by the Act, and (c) without being made or conducted on, or subject to, the rules of any board of trade, exchange, or contract market.

34. The retail commodity transactions described in this Complaint involve commodities as defined in Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012).

35. As set forth above, during the Relevant Period, Defendants Oakmont and DiCrisci violated Section 4(a) of the Act, 7 U.S.C. § 6(a), by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States

9

for the purpose of soliciting or accepting orders for, or otherwise dealing in, any transaction in, or in connection with, retail commodity transactions.

36. Each offer to enter into, execution, confirmation, solicitation, or acceptance of an order for a retail commodity transaction made during the Relevant Period to a non-ECP customer is alleged as a separate and distinct violation of Section 4(a) of the Act, 7 U.S.C. § 6(a).

37. DiCrisci directly or indirectly controlled Oakmont and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Oakmont's violations of Section 4(a) of the Act, 7 U.S.C. § 6(a). Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), DiCrisci is therefore liable for each of Oakmont's violations of Section 4(a) of the Act, 7 U.S.C. § 6(a).

38. The acts and omissions of DiCrisci and other managers, employees, agents, and other persons acting for Oakmont described in this Complaint were done within the scope of their employment, agency, or office with Oakmont. Therefore, Oakmont is liable as a principal for each act, omission, or failure of DiCrisci and Oakmont's other managers, employees, agents, and other persons acting for Oakmont, constituting violations of Section 4(a) of the Act, 7 U.S.C. § 6(a), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

## COUNT II
## FAILURE TO REGISTER
### Violations of 7 U.S.C. § 6d(a)

39. Paragraphs 1 through 38 of this Complaint are re-alleged and incorporated herein by reference.

40. During the Relevant Period, Oakmont, through its managers, employees, and agents, acted as an FCM by soliciting and accepting orders for agreements, contracts, or

transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (*i.e.,* retail commodity transactions), and, in or in connection with those transactions, accepted at least $2,308,228 from its customers.

41.    Section 4d(a) of the Act, 7 U.S.C. § 6d(a), provides that it shall be unlawful for any person to be an FCM unless such person shall have registered with the Commission as an FCM.

42.    During the Relevant Period, Oakmont failed to register with the Commission as an FCM, and therefore violated Section 4d(a), 7 U.S.C. § 6d(a).

43.    DiCrisci directly or indirectly controlled Oakmont and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Oakmont's violations of Section 4d(a) of the Act, 7 U.S.C. § 6d(a), alleged in this Complaint. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), DiCrisci is therefore liable for each of Oakmont's violations of Section 4d(a) of the Act, 7 U.S.C. § 6d(a).

44.    The acts and omissions of DiCrisci and other managers, employees, agents, and other persons acting for Oakmont described in this Complaint were done within the scope of their employment, agency, or office with Oakmont. Therefore, Oakmont is liable as a principal for each act, omission, or failure of DiCrisci and Oakmont's other managers, employees, agents, and other persons acting for Oakmont, constituting violations of Section 4d(a) of the Act, 7 U.S.C. § 6d(a), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

## VIII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A. An Order finding that Defendants violated Sections 4(a) and 4d(a) of the Act, 7 U.S.C. §§ 6(a) and 6d(a);

B. An Order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct in violation of Sections 4(a) and 4d(a) of the Act, 7 U.S.C. §§ 6(a) and 6d(a);

C. An Order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from directly or indirectly:

   1) Trading on, or subject to the rules of, any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

   2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2015)) for their own personal account or for any account in which they have a direct or indirect interest;

   3) Having any commodity interests traded on their behalf;

   4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

   5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

   6) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015);

    7)     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015); and

    8)     Engaging in any business activities related to commodity interests.

D.     An Order directing Defendants, as well as any successors, to disgorge pursuant to such procedure as the Court may order, all benefits received from the acts or practices described herein that constitute violations of the Act, pre-judgment interest from the date of such violations, and post-judgment interest;

E.     An Order directing Defendants, as well as any successors, to make full restitution, pursuant to such procedure as the Court may order, to every customer whose funds Defendants received or caused another person or entity to receive as a result of the acts and practices described herein which constitute violations of the Act, pre-judgment interest from the date of such violations, and post-judgment interest;

F.     An Order directing Defendants, as well as any successors, to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether express or implied, entered into between Defendants and any of the customers whose funds were received by Defendants as a result of the acts and practices which constitute violations of the Act, as described herein;

G.     An Order directing Defendants, as well as any successors, to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than

      the greater of (1) triple the monetary gain to Defendants for each violation of the Act; or (2) $140,000 for each violation committed, plus post-judgment interest;

H.    An Order directing Defendants, as well as any successors, to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

I.    Such other and further relief as the Court deems proper.

Dated: January 12, 2016

Respectfully submitted,

s/Kassra Goudarzi
Kassra Goudarzi
FL Special Bar #A5502136
kgoudarzi@cftc.gov

Michael Solinsky
FL Special Bar #A5501936
msolinsky@cftc.gov

U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, DC 20581
Telephone: (202) 418-5416 (Goudarzi)
Telephone: (202) 418-5384 (Solinsky)
Fax: (202) 418-5937

Attorneys for Plaintiff